*In re* ESTATE OF WARREN CASEY, Deceased (Milo Popovich, Claimant-Appellant, v. Harris Trust and Savings Bank, as Ex'r of the Will of Warren Casey, Deceased, Respondent-Appellee).

First District (6th Division)   No. 1—90—1595

Opinion filed November 15, 1991.

Maxwell & Perlstein, of Chicago (Andrew J. Maxwell and Steven S. Potts, of counsel), for appellant.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Barbara K. Lunderga, Robert H. Joyce, and Bryan W. Sill, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

Milo Popovich filed a claim against the estate of Warren Casey contending he was entitled to money promised to him by Casey for personal services provided by Popovich. Popovich alleged the promise was memorialized by Casey in writing before Casey's death. The one-count complaint was dismissed for failure to state a cause of action and Popovich was given leave to amend. Popovich filed an amended complaint in six counts claiming that Casey had promised him money as memorialized in writing and several items of personal property and cash as promised orally or through an implied contract. The trial

court dismissed count 1 for failure to state a cause of action. The trial court dismissed counts II, III and IV, dealing with promises of money and specific personal items, because those claims were time barred and did not relate back to the original claim. The court took no action on counts V and VI dealing with Casey's alleged transmission of the AIDS virus to Popovich. Popovich appealed the dismissal of the four counts.

On appeal, plaintiff raises these issues: (1) whether count I of the amended complaint was properly dismissed because it did not state a cause of action and (2) whether counts II, III and IV of the amended complaint were properly dismissed, did not relate back to the original claim and were therefore time barred because they were not filed within the six-month claims period.

The details of the alleged agreement between Popovich and Casey appear in the record. On May 24, 1989, Milo Popovich filed a one-count claim against Casey's estate seeking in excess of $700,000. The claim alleged that in 1984, Casey made certain oral and written promises to Popovich in exchange for services performed and other valuable consideration. The promises of payment were allegedly memorialized in a writing in letter form attached as an exhibit to the complaint and dated July 29, 1986, which stated:

"Milo Popovich,

This is to let you and your lovely family know that if I, Warren Casey, die before you, or, if you die before your loan to me is paid in full, then the balance of your $10,000 loan, dated July 28, 1986, to me is immediately cancelled.

However, if you survive me, I leave to you, Milo Popovich, one hundred times the balance of that loan owed to me. Thank you for two of the best years in my life. You're very special to me and always will be.

Love

(signature)

Warren Casey

Witnessed:

(Signature of Milo S. Popovich)

July 29, 1986"

Warren Casey died on November 8, 1988. Casey's will, dated May 29, 1986, was admitted to probate and letters of office were issued for his estate on November 28, 1988, naming Harris Trust & Savings Bank as executor of the estate.

Popovich's complaint alleged that in reliance on Casey's promises he provided care and other valuable services to Casey, including "caretaking of decedent's apartment, performing secretarial and clerical duties for decedent, chauffeuring, domestic chores, including cleaning and shopping, and caring for decedent when ill." Popovich claimed that he detrimentally relied on the promises from Casey, foregoing "other opportunities."

Popovich alleged that decedent breached this expressed, or in the alternative, implied, contract by failing to make appropriate arrangements for the payment of his claim. Popovich sought an amount in excess of $700,000, pursuant to the purported agreement. The executor of the estate moved to dismiss the claim and that motion was granted on October 20, 1989, giving Popovich leave to file an amended complaint within 30 days.

On November 20, 1989, Popovich filed an amended complaint in six counts. Count I alleged Popovich performed various personal services for Casey from 1984 to 1986 and withheld acting on several opportunities of his own at Casey's request based on the written promise to devise to Popovich a portion of Casey's estate.

Counts II and III sought various items of Casey's personal property allegedly promised to him for the previously mentioned personal service and forbearances. Popovich sought as relief the particular portions of Casey's estate allegedly promised to him including: an apartment in California, a choice of jewelry from Casey's safe deposit box, Casey's rights and royalties to the stage play "Grease," a one-acre lot adjacent to Casey's property in Sutter Creek, California, a Corvette, $50,000 on his 50th birthday, financial assistance to Popovich for the rest of his life and financial backing for Popovich's proposed restaurant venture.

Count IV alleged that an implied contract existed between Casey and Popovich for services rendered by Popovich and that Casey had failed to sufficiently compensate Popovich for the services performed. Counts V and VI alleged that Popovich and Casey had a sexual relationship from 1984 to 1986 and that Casey knew or should have known he had contracted Acquired Immune Deficiency Syndrome (AIDS) and could have warned Popovich. Popovich alleged that he has since tested positive for the HIV virus, a pre-AIDS condition. Popovich sought $1 million for the physical injury and emotional distress.

The executor moved to dismiss count I of the amended complaint for failure to state a cause of action and to dismiss counts II, III and IV because the counts alleged new causes of action that were time barred. On March 19, 1990, the trial court entered an order dismissing counts I, II, III and IV of Popovich's amended claim with prejudice. The court subsequently denied Popovich's motion for reconsideration and Popovich appealed.

First we consider whether the trial court properly dismissed count I of the amended complaint for failure to state a cause of action.

Popovich contends that count I clearly states a *prima facie* cause of action for breach of an express written contract based on adequate and valid past consideration and that the trial court erred in dismissing this count. On a motion to dismiss, the trial court must take all well-pled facts as true and draw reasonable inferences from those facts in the nonmoving party's favor. *Barbour v. South Chicago Community Hospital* (1987), 156 Ill. App. 3d 324, 325, 509 N.E.2d 558.

■■ Popovich's claim against the estate based on the purported written agreement seeks money in exchange for past services rendered. Popovich contends that the consideration for this agreement is seen in the line, "Thank you for two of the best years of my life." Popovich concedes that Illinois generally forbids a contract to be based on past consideration, but Popovich contends that his situation meets three of the four exceptions to that rule as articulated in *Worner Agency, Inc. v. Doyle* (1985), 133 Ill. App. 3d 850, 856-57, 479 N.E.2d 468, 473. The court in *Worner* stated:

> "The general rule is that if the alleged consideration for the promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contact. As with all general rules, there are exceptions. These are where (1) the consideration was rendered at the request of the promisor; (2) the alleged consideration was of a 'beneficial' or 'meritorious' nature which placed the promisor under a moral duty or obligation such that consideration for the promise will be implied; (3) the promise is to pay 'a debt due in conscience,' such as a promise to support an illegitimate child; or (4) the promise is founded upon an antecedent legal obligation, such as a debt which has become barred by the statute of limitations. [Citation.] Not every benefit conferred upon an individual is deemed to create a moral duty to repay which forms consideration for a promise of the person benefited to pay for the benefit. *** [A]ll circumstances must be of such a nature as to presuppose a request for the benefit." *Worner*, 133 Ill. App. 3d at 856-57.

Popovich contends that his complaint alleges facts permitting him to rely on past consideration to meet the first three *Worner* exceptions listed. Though Popovich fails to detail how the facts meet any of the three exceptions, he does argue that "it cannot be doubted that [he] made factual allegations sufficient to state a *prima facie* cause of action" and that "count I of the amended claim clearly states a *prima facie* cause of action for breach of an expressed written contract to devise or bequeath property, based upon adequate and valid past consideration."

In addition, Popovich contends that the trial court erred by not permitting Popovich a hearing on the merits. Popovich contends that a hearing would debunk arguments brought by the executor, including the executor's contention that the written agreement was merely Casey's "statement of testamentary intention" and the presumption that prior services rendered were paid based on Casey's $10,000 loan to Popovich. Popovich contends that a hearing would permit him to establish that the service rendered and his forbearances gave Casey "two of the best years" of his life and were adequate consideration for the written agreement.

Popovich rejects the argument that he may have rendered his services gratuitously and cites *In re Estate of Dal Paos* (1969), 118 Ill. App. 2d 235, 237-39, 254 N.E.2d 300, to support his position. In *Dal Paos*, Anna DeRichi filed a claim against Dal Paos' estate claiming that she was owed part of the estate in exchange for services she rendered to Dal Paos for the five years preceding his death. The court found that although the two lived together for several years, no family relationship existed between them. (*Dal Paos*, 118 Ill. App. 2d at 239.) The two were not related by blood or marriage, and there was no evidence they lived as man and wife. The original expressed agreement between them was that DeRichi would move in and pay $16 room and board to Dal Paos. That did not change until the two bought a house together 10 years later, splitting the expenses equally for taxes, utilities and groceries. During that time, DeRichi did all the housework, cooking, laundry and some of the yard work. The trial court found their relationship together was pursuant to this implied contract, that the services were rendered but they were not paid for and that Dal Paos intended to pay for them. The appellate court affirmed, finding that the two never married, never loaned each other money and Dal Paos left no money to DeRichi's children. (*Dal Paos*, 118 Ill. App. 2d at 239.) The appellate court held that "[t]hese factors indicate that [DeRichi's] services were not rendered in discharge of the mutual moral or legal obligations of a family relationship and re-

fute [the estate's] assertion that such a relationship existed." *Dal Paos*, 118 Ill. App. 2d at 239.

Popovich contends that he too rendered services in anticipation of payment and not because of some moral or legal obligation of a family relationship.

The executor argues that Popovich failed to state a cause of action for breach of contract because the amended complaint fails to establish facts that would permit Popovich to fit into one of the exceptions in *Worner* so as to allow past services to be sufficient consideration for the agreement. The executor rejects Popovich's contention that an evidentiary hearing is required because the issue of whether there is adequate consideration for an agreement is a question of law, not fact. (*Lesnik v. Estate of Lesnik* (1980), 82 Ill. App. 3d 1102, 1107, 403 N.E.2d 683, 687.) The executor contended that the outstanding loan permitted the trial court to presume that services previously rendered had been paid. In the case of *In re Estate of Schonhoff* (1965), 65 Ill. App. 2d 147, 212 N.E.2d 18, the court held that "[w]here a claimant borrows from a decedent, a presumption arises that a claim based on services previously rendered has been paid, or that the claimant never intended to charge for such services." *Schonhoff*, 65 Ill. App. 2d at 150.

The estate argues that Popovich has failed to meet any of the factual criteria that would permit his claim to fall into one of three exceptions in *Worner*: (1) the consideration was rendered at the request of Casey; (2) the consideration was of a "beneficial" or "meritorious" nature which placed Casey under a moral duty or obligation such that consideration for the promise will be implied; or (3) the promise is to pay a debt due in conscience.

The executor argues that Popovich has pleaded no facts establishing that his services were rendered at Casey's request and for Casey's benefit. The executor argues that the written agreement actually refutes such a conclusion, because nothing in the agreement refers to any service rendered by Popovich nor does it give any indication of Casey's request or any benefit to him from the services.

The executor argues further that Popovich has pleaded no facts establishing that the promise can be implied because the consideration was of a "beneficial" or "meritorious" nature so as to place Casey under a moral duty or obligation to repay him. The executor contends that the services allegedly rendered are not the type for which compensation would be expected if done in the context of affinity and affection. (*In re Estate of Spaulding* (1989), 187 Ill. App. 3d 1031, 1037-38, 543 N.E.2d 980, 985.) The executor contends that Popovich would

suffer no gross fraud if he was left uncompensated for his "alleged occasional housekeeping and caretaking services." *Greenwood v. Commercial National Bank* (1955), 7 Ill. 2d 436, 438, 130 N.E.2d 753, 756.

The executor then argues that the letter constitutes nothing more than testamentary intent ("if I, Warren Casey, die before you *** if you survive me"), gratitude ("thank you for two of the best years of my life"), and affection ("you're very special to me and always will be"). The executor argues that even if the letter could be construed as an intention to make a will, mere statements by Casey of his intention to make a will are not sufficient proof to warrant the inference that a contract of any kind was made. *Spaulding*, 187 Ill. App. 3d at 1036.

The executor argues that the written agreement belies Popovich's claim in the complaint that the elements of a valid contract were met. Where a discrepancy exists between allegations in the complaint and attached exhibits, the exhibits are controlling. *Outboard Marine v. James Chisholm & Sons, Inc.* (1985), 133 Ill. App. 3d 238, 247, 478 N.E.2d 651, 656.

Popovich's complaint was dismissed on the estate's motion filed under section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) Motions under section 2—615 attack the legal sufficiency of the complaint. (*Weimann v. County of Kane* (1986), 150 Ill. App. 3d 962, 968, 502 N.E.2d 373.) Granting a motion to strike or dismiss is within the sound discretion of the trial court. *Harvey v. Mackay* (1982), 109 Ill. App. 3d 582, 440 N.E.2d 1022.

In determining the propriety of dismissal of an action, this court is concerned on review only with questions of law presented by the pleadings, and the court tests the sufficiency of the complaint by ascertaining whether the essential elements of a cause of action were alleged. *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 191, 478 N.E.2d 603.

The record establishes that in its ruling, the trial court supported or "adopted" the arguments proffered by the executor. The executor's argument was twofold. First, the writing was a testamentary disposition but not a will because it did not meet the statutory requirements of a will. Second, the executor argued that the agreement was not a valid contract because it lacked present consideration and failed to meet the *Worner* exceptions that permit past consideration to serve as the consideration for the contract agreement.

■ We conclude the trial court was correct when it found Popovich failed to state a cause of action. The letter dated July 29, 1986,

clearly could not meet the statutory requirements of a will. Popovich has failed to establish how his situation fits into any of the three exceptions he cites from *Worner*. He has not established that the consideration was rendered at the request of Casey, or that it was of a beneficial or meritorious nature which placed Casey under a moral duty or obligation such that consideration for the promise would be implied, or that it was a promise to pay a debt due in conscience.

We note that Casey authored the alleged testamentary letter on July 29, 1986, two months after signing his May 29 will. He died 28 months later, giving him ample time to revoke his will or to write a codicil. He did neither.

Next we consider whether the trial court properly dismissed counts II, III and IV of the amended complaint because the charges did not relate back to count I in the original complaint.

■ The trial court ruled that the claims alleged in counts II, III and IV were new claims for activities not contained in count I and therefore could not relate back to the filing date of the original claim. The court stated that because they did not relate back to the original claim, the claims were time barred. Under the Probate Act, claims against an estate must be filed within the six-month period that begins when the letters of office are issued. Ill. Rev. Stat. 1989, ch. 110½, par. 18—12.

■ There is no question that the amended complaint was filed beyond the six-month statutory deadline. Popovich contends that counts II, III and IV relate back, however, to the original complaint, which was filed within the six-month time period, and that they merely provided more detail and specificity for plaintiff's original claim. Section 2—616(b) of the Illinois Code of Civil Procedure permits an amended pleading to relate back to the filing date of the original pleading if two requirements are met: (1) the original pleading was timely filed and (2) the original and amended pleading grew out of the same transaction or occurrence. Ill. Rev. Stat. 1989, ch. 110, par. 2—616(b).

Counts II, III and IV allege Popovich provided Casey with personal services and in exchange Casey orally promised him various items such as $50,000 in cash on his 50th birthday, a Corvette, an apartment in California, a choice of jewelry from Casey's safe deposit box, Casey's rights and royalties to the stage play "Grease," a one-acre lot adjacent to Casey's property in Sutter Creek, California, financial assistance to Popovich for the rest of his life and financial backing for Popovich's proposed restaurant venture.

Popovich contends that his amended complaint "identified the core transactions on which were based the legal theories pleaded."

Popovich contends that the different items of property are not different agreements but rather were promised to him as part of a single, ongoing oral agreement between Popovich and Casey. He argues that the executor's position that each agreement is separate would require that the court believe Popovich performed certain services for certain items of Casey's property. Instead, Popovich argues that the cash and personal items were general compensation promised in consideration for all of Popovich's services.

The executor argues that the amended complaint was properly dismissed by the trial court because counts II and III seek items of Casey's property and some cash not sought in the original complaint. In addition, the executor notes that count IV asks the court to find that a contract implied at law existed because of the alleged services rendered for Casey by Popovich. The executor contends that this argument is exactly opposite to the claim made in the original complaint, which sought money allegedly promised in a written contract.

We find Popovich's argument implausible. Surely if Popovich believed that all of these items were due to him from the start, he would have sought them in his original complaint. We find that the claims alleged in counts II, III and IV do not relate back to the original complaint under the statutory framework of section 2—616(b). Although the original complaint based on the letter of July 29 was timely filed, we find that the relief sought in the amended complaint includes in addition thereto alleged oral agreements above and beyond those contained in the July 29 letter. The trial court ruled correctly when it dismissed counts II, III and IV.

For all of the foregoing reasons, therefore, we affirm the trial court order dismissing counts I, II, III and IV of Popovich's amended complaint.

Affirmed.

McNAMARA and EGAN, JJ., concur.