BUREAU SERVICE COMPANY, Plaintiff-Appellant, v. JERRY KING *et al.*, Defendants-Appellees.

Third District   No. 3—98—0497

Opinion filed November 17, 1999.

Roger C. Bolin (argued), of Boyle, Goldsmith & Bolin, of Hennepin, for appellant.

Donald R. Rayfield (argued), of Pierson, Maloney & Rayfield, of Princeton, for appellees.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Plaintiff, an agricultural cooperative, appeals from an order of the

circuit court of Bureau County granting defendant farmers' motion pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)) seeking involuntary dismissal of plaintiff's complaint for breach of certain oral contracts to deliver grain. The trial court granted defendants' motion pursuant to the statute of frauds provision of the Uniform Commercial Code (UCC) (810 ILCS 5/2—201 (West 1996)). Plaintiff then filed a motion for leave to amend its complaint, which the trial court denied. Plaintiff now appeals both orders. For the following reasons, we affirm the order dismissing the complaint, but we reverse and remand the denial of plaintiff's motion for leave to amend its complaint.

Bureau Service Company (BSC) is an Illinois cooperative association engaged in the buying and selling of grain. Defendant Jerry King farmed on his own and as a tenant of defendant Bill Lange. King is Lange's son-in-law. The record established that the parties had been doing business with each other prior to the controversy at issue for a period of approximately 10 years. BSC customarily sold fertilizer and chemicals to King and Lange, and approximately half of their total crop production was sold to BSC. Most of these transactions were accomplished on a verbal basis.

BSC filed a single-count complaint against King and Lange seeking recovery of damages for an alleged breach of two oral contracts entered into by King on behalf of himself and Lange for the delivery of grain to BSC. In its complaint, BSC alleged that on or about September 29, 1995, King entered into two oral contracts with BSC whereby both defendants agreed to sell to BSC a total of 15,000 bushels of number 2 yellow corn at a price of $3.19 per bushel. The contracts allegedly called for delivery in June 1996, with 5,000 bushels to be delivered by both King and Lange and 10,000 bushels to be delivered by King.

BSC's complaint further alleged that on October 5, 1995, King again entered into two oral contracts with BSC whereby both defendants agreed to sell to BSC a total of 15,000 bushels of number 2 yellow corn at a price of $3.16 per bushel. As in the previous contract, delivery was to be in June 1996, with 5,000 bushels to be delivered by King and Lange, and 10,000 bushels to be delivered by King.

Also alleged in BSC's complaint was that all four oral contracts provided defendants with an option to defer delivery until December 1996. If defendants exercised this right to defer delivery on any of the four contracts, the price to be paid would be the original contract price minus the difference between the July and December corn futures contracts on the Chicago Board of Trade as of the date of the election.

BSC alleged that on or about May 15, 1996, King exercised the option to defer delivery of 15,000 bushels. However, no delivery was ever

made, and this cause of action was filed. In response, defendants filed a motion to dismiss in which they interposed a defense based upon the statute of frauds (735 ILCS 5/2—201 (West 1996)), asserting that the alleged contracts were unenforceable due to lack of a written instrument.

In response to defendants' motion, BSC filed an affidavit given by its marketing manager, Doug Schwartzkopf, in which he stated that he dispatched to King four written confirmatory memoranda with respect to the September 29, 1995, and October 5, 1995, oral agreements. Copies of those documents were attached to the affidavit. The affidavit is silent as to the date the documents were allegedly dispatched. Reference was made in the affidavit, however, to three other written confirmatory memoranda allegedly memorializing King's May 15, 1996, agreement to deliver 15,000 bushels of corn in December 1996. Those three memoranda were dated May 28, 1996, and BSC subsequently acknowledged that all seven documents were dispatched at the same time. The record indicates that King received the memoranda, but no written notice of objection to any of the seven documents was ever dispatched to BSC.

The trial court granted defendants' motion for involuntary dismissal, finding that the statute of frauds barred plaintiff's cause of action. In so ruling, the trial court specifically found that the four confirmatory memoranda sent May 28, 1996, were not sent within a reasonable time after the alleged oral agreement. BSC appeals.

■ We review *de novo* the granting of a motion for involuntary dismissal pursuant to section 2—619. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). The standard in such matters is similar to the one applicable to a motion for summary judgment, and we will consider the pleadings, affidavits, and depositions when reviewing a ruling on such a motion. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995).

■ The UCC governs this transaction, as all parties were engaged in grain merchandising. *Sierens v. Clausen*, 60 Ill. 2d 585 (1975). Section 2—201(1) of the UCC provides:

> "[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." 810 ILCS 5/2—201(1) (West 1996).

The UCC also provides:

> "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is

received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received." 810 ILCS 5/2—201(2) (West 1996).

Here, there is no dispute that the alleged oral contracts occurred on September 29, 1995, and October 5, 1995, and that the alleged confirmatory memoranda were sent on May 28, 1996. The question before us is whether the passage of some eight months between the oral agreement and the confirmatory writing was "a reasonable time" under section 2—201 of the UCC.

■ Relying upon section 1—204 of the UCC, BSC posits that a reasonable time is any time that is not manifestly unreasonable. We disagree. That section provides that whenever the UCC "requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement." 810 ILCS 5/1—204 (West 1996). Rather, we find that the definition of "reasonable time" applicable to the instant case is contained in section 1—204(2) of the UCC, which provides: "What is a reasonable time for taking any action depends upon the nature, purpose and circumstances of such action." 810 ILCS 5/1—204(2) (West 1996).

■ After reviewing the record we find that, under the circumstances of this action, a delay of over eight months in sending confirmatory memoranda was unreasonable. Although there are no reported cases from Illinois on this issue, we are persuaded by the rationale of several of our sister states in dealing with this very issue. In *Lish v. Compton*, 547 P.2d 223 (Utah 1976), a grain broker alleged that a wheat farmer had entered into a verbal contract to sell his crop to the broker. The broker sent the farmer a written confirmatory memorandum 12 days after the alleged oral contract. Noting the volatility of the grain market, the Supreme Court of Utah held that, in the case of a grain contract, a written confirmation given 12 days after the contract was not given in a reasonable time to satisfy the UCC written confirmation exception to the statute of frauds.

Likewise, in *Cargill, Inc. v. Stafford*, 553 F.2d 1222 (10th Cir. 1977), the court held that written confirmation of an oral contract for the sale of grain received 25 days after the contract date was not received within a reasonable time so as to remove it from the statute of frauds. We also are persuaded by the reasoning of the Supreme Court of Nebraska, which held that, based upon the custom and practice of the grain trade and the volatility of that market, written confirmation of an oral contract for the sale of wheat received more than six months after the contract date was not given within a reasonable time for purposes of the written confirmation exception to the

statute of frauds. *Kimball County Grain Cooperative v. Yung*, 200 Neb. 233, 263 N.W.2d 818 (1978).

In addition to these authorities, we are further persuaded by the affidavits of two local grain dealers, who if called to testify would have testified that it was the custom and practice of grain dealers in the area to send confirmatory memoranda regarding oral contracts for grain sales within four to seven days of the oral contract. Based upon the foregoing, we are convinced that the nature, purpose and circumstances surrounding the buying and selling of grain mandates that a delay of eight months in sending a confirmatory memorandum is unreasonable. We therefore affirm the trial court's involuntary dismissal of BSC's complaint based upon the statute of frauds.

■ BSC next maintains that the trial court erred in not allowing it to amend its complaint. The standard of review for the denial of a motion for leave to file an amended complaint is whether the trial court abused its discretion in denying the motion. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263 (1992). The *Loyola* court identified four factors in determining whether a trial court abused its discretion in denying a litigant an opportunity to amend its complaint following dismissal: (1) whether the proposed amendment would cure the defective pleading; (2) whether the parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *Loyola*, 146 Ill. 2d at 273.

Here, we note that only the first factor is at issue, as there is no showing that the proposed amendment would be prejudicial or untimely or that previous opportunities to amend the pleading have been extended. The only question that remains is whether the proposed amendment would cure the defective pleading.

In the original complaint, BSC alleged that on May 15, 1996, King exercised an option to defer the September and October oral contracts. The September and October agreements were held by the trial court to be unenforceable. As those contracts were unenforceable, the options contained therein were also unenforceable. Thus, as pled in the original complaint, the statute of frauds barred recovery for all claims. However, in count II of the proposed amended complaint, BSC pleads an alternative legal and factual basis for recovery under the May 15, 1996, oral agreements. BSC maintains, in the alternative, that the oral agreements on May 15, 1996, were not option contracts, as it had previously maintained, but instead were new, independent contracts. Further, the proposed amended complaint alleges that as to those three contracts confirmatory memoranda were dispatched 13 days later.

■ BSC could have pled this alternative legal and factual theory as a second count in its original complaint. It is well settled that at the pleading stage of the proceedings, where the issue is solely the sufficiency of the pleadings and whether plaintiffs can conceivably prove a set of facts that would entitle them to recovery, plaintiffs may plead factual allegations and legal theories in the alternative and, at trial, choose which theories of recovery to pursue. *Wegman v. Pratt*, 219 Ill. App. 3d 883, 895-96 (1991). The Illinois Code of Civil Procedure (735 ILCS 5/2—613(b) (West 1996)) clearly authorizes alternative pleading, regardless of the consistency of the allegations, as long as the alternative factual statements are made in good faith and with genuine doubt as to which contradictory allegation is true. *Wegman*, 219 Ill. App. 3d at 895.

As BSC could have pled an alternative factual allegations and legal theory in the initial complaint, we hold that it was an abuse of discretion for the trial court not to permit BSC to plead its alternative allegations and theory in an amended complaint. We therefore remand this matter to the trial court to allow BSC to file its amended complaint.

For the foregoing reasons, the decision of the circuit court of Bureau County is affirmed in part, reversed in part and remanded for action consistent with this decision.

Affirmed in part, reversed in part and remanded.

LYTTON and BRESLIN, JJ., concur.