# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Gagnon v. Schickel*, 2012 IL App (1st) 120645

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL J. GAGNON, Plaintiff-Appellant, v. DEBORAH SCHICKEL, Defendant-Appellee (Michael J. Laird and Mark Iles, Jr., Defendants). |
| District & No. | First District, First Division<br>Docket No. 1-12-0645 |
| Filed | December 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a joint venture between plaintiff and defendant in which they were allegedly "doing real estate together," the trial court properly dismissed the counts seeking a declaratory judgment and specific performance and claiming unjust enrichment, since plaintiff's claims were contradicted by the gift letter he wrote to defendant, there was no written contract, and a claim for unjust enrichment could not be based on an express oral agreement; however, the trial court's rulings on the claim for unjust enrichment related to promises defendant allegedly made to plaintiff with respect to the second property purchased and on claims for promissory fraud and for a constructive trust were reversed and the cause was remanded. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-37052; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded with directions. |

Counsel on
Appeal

Lavin & Waldon, P.C., of Chicago (Dennis C. Waldon, of counsel), for appellant.

Kaplan Silverman LLC, of Chicago (Arnold Kaplan, of counsel), for appellee.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Cunningham and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Michael Gagnon, appeals from the trial court's judgment finding in favor of the appellee, Deborah Schickel, on several counts of his 15-count complaint against her and two other defendants, Michael Laird and Mark Iles, Jr.[1], who are not parties to this appeal. On appeal, the plaintiff argues that the trial court erred in dismissing three of the counts of his complaint prior to trial and in finding in favor of Schickel on three additional counts following trial. For the reasons that follow, we affirm the trial court's dismissal of the first three counts of the plaintiff's complaint, but we reverse the trial court's rejection of three additional claims following a trial. We remand the cause with directions for the trial court to make further findings in accordance with the views expressed herein, and to order damages as appropriate.

¶ 2    The plaintiff filed his amended complaint in May 2005. In that complaint, the plaintiff alleged that he and Schickel agreed in 2004 to purchase a Tinley Park house together and to share the attendant costs and profits. The plaintiff alleged that he contributed his portion of the purchase price and that he thereafter paid for a portion of the utilities, taxes, and improvements. However, despite her assurances that she would file a quitclaim deed conferring upon him a one-half interest in the Tinley Park property, Schickel never filed that deed; instead, she remained the sole record owner of the Tinley Park property. In December 2006, Schickel learned that the plaintiff intended to purchase investment property in Bourbonnais. The complaint averred that she "demanded *** that she be put on the title as a co-owner, because, in her words, 'we are doing real estate together.' " Based on his belief that the appellee had filed the quitclaim deed for the Tinley Park property naming him as a co-owner, the plaintiff acceded to Schickel's demand. The complaint alleged that, thereafter, the plaintiff paid all of the expenses related to the Bourbonais property, including mortgage payments, taxes, appliances, and improvements, and he received all of the rental income that

_____

[1]Iles's filings in the circuit court indicate that his name is "Mark Iles," not "Mark Iles, Jr." However, we use the spelling from the complaint.

the property produced.

¶ 3 The complaint stated that, in 2008, the parties' personal relationship soured, and Schickel thereafter denied that the plaintiff had any interest in the Tinley Park property. It was only then, the plaintiff alleged, that he learned that Schickel never conveyed a one-half interest in the property to him.

¶ 4 Based on the above allegations, the plaintiff brought claims against Schickel seeking recoupment of money he had contributed to the properties, an order compelling Schickel to convey to him a one-half interest in the Tinley Park property, and an order compelling Schickel to relinquish any interest in the Bourbonnais property. For the remedies relating to the Tinley Park property, the plaintiff asserted claims for declaratory judgment (count I), specific performance (count II), unjust enrichment (count III), breach of contract (count V), breach of fiduciary duty (count VI), promissory estoppel (count VII), equitable estoppel (count VIII), common law fraud (count IX), constructive trust (count X), and recission of his gift (*i.e.*, his contribution to the purchase price) to Schickel (count XI). With respect to the Bourbonnais property, the plaintiff asserted a cause of action based on unjust enrichment (count IV), contending that it would be unjust to allow Schickel to retain her interest in the Bourbonnais property, because the plaintiff conveyed it to her, and paid all the expenses related to the property, based on his belief that he shared ownership of the Tinley Park property. The plaintiff also sought replevin of personal property left at the Tinley Park residence (count XII). The remaining three counts of the complaint alleged malpractice or negligence against Laird, an attorney involved in the transactions (counts XIII and XV), and Iles, a mortgage broker involved in the transactions (count XIV). Those latter three counts were dismissed before trial.

¶ 5 Count I, which asserted a claim for declaratory relief against Schickel, sought declarations that (1) the parties had entered into a joint venture and oral agreement to purchase the Tinley Park property together, to acquire a 50% interest in the property, and share the associated costs of maintaining the property and the profits from the appreciation of the property; (2) Schickel breached the terms of their oral agreement by failing to record the quitclaim deed; and (3) Schickel is bound by the terms of the joint venture and the agreement to sign the quitclaim deed, and have it recorded with the Cook County recorder of deeds.

¶ 6 Count II sought a judgment requiring Schickel to specifically perform under the terms of the oral agreement and joint venture with respect to the Tinley Park property. The complaint requested that the circuit court order Schickel to sign the quitclaim deed and have it recorded immediately with the Cook County recorder of deeds. In addition, the plaintiff requested injunctive relief prohibiting respondent from acting inconsistently with the terms of the agreement.

¶ 7 Count III alleged, in the alternative, that Schickel was unjustly enriched by the sole ownership of the Tinley Park property. It asserted that during the closing of that property, Schickel received a gift from the plaintiff in the amount of $147,250, which was conditioned on her signing a quitclaim deed conveying 50% ownership of the Tinley Park property to the plaintiff within 30 days of closing and recording it with the Cook County recorder of deeds.

The plaintiff alleged that he paid for the gas and telephone bills related to the Tinley Park property, as well as improvements and remodeling in excess of $37,000; one-half of the real estate taxes, estimated at $5,300 annually; and that he spent more than 2,700 hours working on the Tinley Park property improvements and remodeling. Count III further alleged that Schickel obtained a $75,000 line of credit and used the Tinley Park property as collateral. Moreover, the plaintiff claimed that the Tinley Park property is valued at least at $350,000 and that Schickel was unjustly enriched by retaining the benefits of the plaintiff's contributions, monetary and otherwise.

¶ 8 Pursuant to Schickel's motion, the trial court dismissed counts I, II, III, V, VI, VIII, and XI of the complaint. In dismissing count I, the trial court concluded that the plaintiff failed to adequately plead the elements necessary to show the parties' intent to form a joint venture. The court further found that the gift letter, which was attached as an exhibit to the complaint, directly contradicted, and therefore defeated, the plaintiff's claim alleging that the $147,250 he gave to Schickel was a conditional gift.

¶ 9 With regard to count II, the trial court ruled that the plaintiff's claim for specific performance of the alleged oral contract must be dismissed because the statute of frauds precludes enforcement of a contract for the sale of land without a signed, written contract. The court also concluded, that even if the contract were enforceable, the plaintiff did not satisfy his obligation under the contract, because the $147,250 was not given in exchange for an ownership interest in the property or any obligation of repayment, as demonstrated by the gift letter that was attached as an exhibit to the complaint.

¶ 10 Lastly, count III was dismissed based on the trial court's determination that the theory of unjust enrichment can apply only to a contract implied in law. Therefore, the court held that the claim for unjust enrichment could not proceed where the plaintiff simultaneously alleged the parties had an express oral agreement.

¶ 11 The circuit court also initially dismissed count IV, on the basis that an unjust enrichment theory asserts the existence of a quasi-contractual relationship, which cannot exist where there is an actual contract. The court reasoned that the mortgage and title documents reflecting Schickel's ownership constituted such an actual contract. However, in response to Schickel's motion to reconsider, the court conceded that the dismissal had been improper, and it reinstated count IV. The cause proceeded to trial on counts IV, VII, IX, X, and XII.

¶ 12 In his trial testimony, the plaintiff explained that he contributed to the purchase of the Tinley Park home with the expectation that Schickel would file a quitclaim deed conveying a one-half interest to him. In fact, he testified, she agreed to do so, assured him after the purchase that she would do so, but in actuality never did. He also described improvements he had made to the Tinley Park residence. He further explained that he purchased the Bourbonnais property with his own money, but allowed Schickel to have a one-half ownership interest, because she told him that they were "doing real estate together." He stated that he paid all expenses relating to the Bourbonnais property. For her part, Schickel testified that the plaintiff agreed to allow her to retain full ownership of the Tinley Park property as a way to assuage her concern that joint ownership might complicate any breakup of their volatile relationship. She also said that the parties reached an agreement to have the

plaintiff pay for the Bourbonnais property but to share ownership.

¶ 13    In a memorandum decision following the trial, the circuit court granted the plaintiff a judgment based on promissory estoppel (count VII), premised on a finding that the plaintiff helped purchase the Tinley Park property in reliance on a promise that he would be given an equal ownership share. The court found in Schickel's favor on the plaintiff's claims of unjust enrichment (count IV) and common-law fraud (count IX), and it rejected the plaintiff's requests for a constructive trust (count X) or for replevin (count XII).

¶ 14    The court rejected the unjust enrichment claim for the same reasons it had initially dismissed the claim: it reasoned that the existence of an actual contract (the mortgage and deed relating to the Bourbonnais property) precluded a cause of action for unjust enrichment, which is a quasi-contractual remedy. With respect to the common-law fraud claim, the court concluded that promissory fraud "is not actionable in Illinois unless the promise is part of a scheme to defraud." The court found that Schickel "promised to quit claim one half of the Tinley Park property to Plaintiff" but "never intended to do so," and held that "[t]his meets the definition of promissory fraud" and thus that the plaintiff could not succeed on his fraud claim. The court rejected the plaintiff's request for a constructive trust premised on the fraud argument which the court had rejected.

¶ 15    Based on its promissory estoppel finding, the court awarded the plaintiff a refund of the money he had contributed to the purchase of the Tinley Park property, plus one-half of the property's increase in value.

¶ 16    While a postjudgment motion remained pending, the plaintiff filed an appeal of the trial court's ruling, which we dismissed as premature. *Gagnon v. Schickel*, 2012 IL App (1st) 111421-U. The plaintiff thereafter obtained a final ruling on the pending motion and filed this timely appeal.

¶ 17    The plaintiff's first argument on appeal is that the trial court erred in dismissing the first three counts of his complaint. A motion to dismiss a complaint may be brought under section 2-615 or section 2-619 of the Code of Civil Procedure. See 735 ILCS 5/2-615, 2-619 (West 2010). A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint and it must point, with specificity, to the alleged defects on the face of the complaint. See 735 ILCS 5/2-615 (West 2010). On review of a dismissal for failure to state a claim, the court concerns itself only with the allegations of the complaint and whether they adequately state the necessary elements for the cause of action alleged. *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 190-91, 478 N.E.2d 603, 607 (1985). On the other hand, a section 2-619 motion to dismiss does not attack the legal sufficiency of the claims, but rather attacks the complaint by raising defenses or other affirmative matters, based on the allegations pleaded or outside authority, which would defeat the plaintiff's claims. *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 972-73, 894 N.E.2d 765, 769 (2008).

¶ 18    Pleadings must be construed liberally with the aim of "doing substantial justice between the parties." *Wysocki v. Bedrosian*, 124 Ill. App. 3d 158, 162, 463 N.E.2d 1339, 1343 (1984). The reviewing court should interpret the assertions of the complaint in the light most favorable to the plaintiff by accepting as true all well-pleaded facts and the reasonable inferences that can be drawn from them. *Id.* at 162-63, 463 N.E.2d at 1343; see also *Aurelius*,

384 Ill. App. 3d at 973, 894 N.E.2d at 769 (noting that this rule applies to motions to dismiss brought under both sections 2-615 and 2-619). An exhibit attached to a complaint becomes part of the pleading for every purpose, including the decision on a motion to dismiss. *Wysocki*, 124 Ill. App. 3d at 162, 463 N.E.2d at 1343 (citing Ill. Rev. Stat. 1981, ch. 110, ¶ 2-606); see also *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 395-96, 256 N.E.2d 44, 46 (1970) (affirming the dismissal of a complaint for specific performance where the plaintiff failed to adequately plead the existence of an oral contract because exhibits to the complaint showed that the parties intended to subsequently formalize their agreement in writing, but did not do so). Where an exhibit contradicts the allegations in a complaint, the exhibit controls. *In re Estate of Casey*, 222 Ill. App. 3d 12, 19, 583 N.E.2d 83, 88 (1991) (citing *Outboard Marine Corp. v. James Chisholm & Sons, Inc.*, 133 Ill. App. 3d 238, 478 N.E.2d 651 (1985)). A trial court's dismissal pursuant to a section 2-615 or section 2-619 motion is reviewed *de novo*. *Aurelius*, 384 Ill. App. 3d at 973, 894 N.E.2d at 769.

¶ 19 Here, the plaintiff alleged that he and Schickel entered into an oral agreement, pursuant to which he agreed to pay Schickel one-half the purchase price of the Tinley Park property in exchange for her promise to convey a 50% interest to him after the closing. As such, the essential nature of the agreement between the plaintiff and Schickel was for the purchase of an interest in real property. Accordingly, the statute of frauds would prevent enforcement of their alleged oral agreement. See 740 ILCS 80/2 (West 2010). The plaintiff attempts to overcome this hurdle by alleging that he "fully performed all of his obligations pursuant to the Joint Venture and the [a]greement" and, thus, that the performance exception to the statute of frauds is applicable to permit enforcement of the alleged agreement despite the absence of a written agreement. See *Anson v. Haywood*, 397 Ill. 370, 379, 74 N.E.2d 489, 493-94 (1947) (holding that oral contracts for the future conveyance of land are not barred by the statute of frauds if one party has already fully performed his part of the agreement). As his performance of the alleged agreement, the plaintiff points to: (1) his expenditures related to the improvements and remodeling of the property; (2) his annual payment of 50% of the property's real estate tax; (3) the hours he dedicated to working on the improvements and remodeling of the property; (4) his payments of all the gas and telephone bills related to the property; and (5) his conditional gift to Schickel of 50% of the purchase price for the property. However, we need not decide whether the statute of frauds bars the plaintiff's claim, because we find that he has failed to adequately plead the existence of an oral contract.

¶ 20 The plaintiff alleged, as a term of the oral contract, that he gave Schickel a "conditional gift" consisting of one-half of the purchase price for the property. However, the gift letter that was attached as an exhibit to the plaintiff's complaint entirely refutes his allegations that his monetary gift was conditioned on some subsequent action by Schickel. The gift letter clearly states that it was "a *bona fide* gift with no obligation expected or implied, to repay this sum at any time" and that the donor's gift is not "being made available from any person or entity with an interest in the sale of this property."

¶ 21 The plaintiff attempts to explain the apparent discrepancy by arguing that a conveyance of an interest in the property is not the equivalent of repayment, and, therefore, the exhibit is not inconsistent with his claim that the amount tendered was a conditional gift. This argument is unpersuasive. The later conveyance of an interest in the property is a form of

repayment, expected or implied. Moreover, the plaintiff has clearly alleged in his complaint that he had an interest in the sale of the property, *i.e*, acquiring an ownership interest in the real estate. Accordingly, the gift letter the plaintiff attached to his complaint directly refutes any allegation that he had a contract for the conveyance of property. As noted above, where a complaint's allegations and exhibits conflict, the exhibits control. See *Estate of Casey*, 222 Ill. App. 3d at 19, 583 N.E.2d at 88 (citing *Outboard Marine*, 133 Ill. App. 3d 238, 478 N.E.2d 651).

¶ 22    Because an exhibit to the complaint contradicts an essential term of the alleged oral contract, he has failed to sufficiently allege an oral contract. Therefore, the plaintiff's claim for specific performance was properly dismissed for failure to adequately plead a cause of action. See *Intini v. Marino*, 112 Ill. App. 3d 252, 256, 445 N.E.2d 460, 464 (1983) (concluding that to enforce an oral agreement for the sale of land, " 'the court must find [in part] that the terms of the contract are clear, definite, and unequivocal' " (quoting *Blaise v. Stein*, 75 Ill. App. 3d 793, 796, 394 N.E.2d 836, 839 (1979))).

¶ 23    We next consider the propriety of the dismissal of the plaintiff's claim for declaratory relief. Declaratory judgment is a mode of relief which permits a court to consider a matter after the dispute has developed, but "before steps are taken which give rise to claims for damages or other relief." (Internal quotation marks omitted.) *Beahringer v. Page*, 204 Ill. 2d 363, 373, 789 N.E.2d 1216, 1223 (2003) (quoting *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306, 450 N.E.2d 314, 317-18 (1983)). Its purpose is to allow the parties to resolve the disputes or aspects of the dispute before either party has changed their position in ways that will irrevocably affect their rights. *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174, 651 N.E.2d 1105, 1109 (1995). To successfully allege a cause of action for declaratory judgment, the complaint must sufficiently state an actual and legal controversy and a request for declaration of rights. *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 313, 582 N.E.2d 1180, 1187 (1991).

¶ 24    In this case, the plaintiff's complaint sought declarations that the parties had entered into a joint venture and an agreement to purchase the Tinley Park property, that Schickel breached that agreement, that she was bound to perform her obligations under the agreement, and that she is estopped from disputing the aforementioned declarations. The plaintiff's allegations rely on a determination that a valid, enforceable agreement existed between the parties. However, for the reasons we have already discussed, the plaintiff has failed to allege the existence of an enforceable agreement. Accordingly, we conclude that the plaintiff's claim for declaratory relief was properly dismissed.

¶ 25    We next address the plaintiff's argument that the circuit court erred in dismissing his claim for unjust enrichment relating to the Tinley Park property. To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). Unjust enrichment is not an independent cause of action. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009) (citing *Mulligan v. QVC, Inc.*, 382 Ill. 2d 620, 631, 888 N.E.2d 1190, 1200 (1989)). Rather, "it is a condition that may be brought

about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence" (internal quotation marks omitted) (*Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995)), or, alternatively, it may be based on contracts which are implied in law (*Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 425, 703 N.E.2d 518, 526 (1998)). This theory is inapplicable where an express contract, oral or written, governs the parties' relationship. *Id*. A plaintiff is permitted to plead breach of contract claims in addition to unjust enrichment. See *Bureau Service Co. v. King*, 308 Ill. App. 3d 835, 721 N.E.2d 159 (1999) (a complaint may properly plead alternative theories of recovery despite their apparent inconsistency). Thus, although a plaintiff may plead claims alternatively based on express contract and an unjust enrichment, the unjust enrichment claim cannot include allegations of an express contract. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (2005).

¶ 26    Here, the basis of the plaintiff's claim of unjust enrichment relating to the Tinley Park property is that he and Schickel had a quasi-contractual agreement that obligated her to grant him an interest in the property in exchange for his contribution to its purchase. However, as with the first two counts of the complaint, this allegation is rebutted by the gift letter the plaintiff attached to his complaint. See *Sharkey v. Snow*, 13 Ill. App. 3d 448, 451, 300 N.E.2d 279, 281 (1973) ("exhibits attached to [a] complaint [become] a part thereof for all purposes [citation], and the factual matters contained in the exhibits which are inconsistent with averments of the complaint serve to negate such averments"). Because the gift letter contradicts and effectively nullifies the "conditional gift" assertion, the plaintiff cannot sustain a claim for unjust enrichment. Accordingly, we affirm the dismissal of Count III of the plaintiff's complaint.

¶ 27    The plaintiff's remaining arguments challenge the trial court's judgment following trial. The first of these arguments challenges the trial court's rejection of the claim raised in count IV of his complaint for unjust enrichment relating to the Bourbonais property. While count III was premised on an agreement between the parties to transfer ownership in the Tinley Park property in exchange for funds described in the gift letter, count IV is premised on a different set of promises entirely. In count IV, the plaintiff alleged that his decision to grant the plaintiff an interest in the Bourbonais property was induced by her assurances that she had or would grant him an interest in the Tinley Park property. Thus, the gift letter does not refute the plaintiff's allegations on this point. Nonetheless, we conclude that the trial court erred in rejecting count IV.

¶ 28    To reject the plaintiff's unjust enrichment claim, the trial court cited *Perez* for the rule that "[t]he theory of unjust enrichment is based on a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties." See *Perez*, 301 Ill. App. 3d at 425, 703 N.E.2d at 526. The trial court reasoned that, here, the deed conveying the Bourbonais property to the parties in joint tenancy, and the mortgage and loan documents on which their names appear, constitute the type of contracts between the parties that preclude recovery for unjust enrichment. We disagree.

¶ 29    It is true that a party may not seek a quasi-contractual remedy such as unjust enrichment where an actual contract governs their relationship. That is, "[t]he courts will not imply a contract where there exists an express contract between the parties on the same subject

-8-

matter." *University of Illinois v. Continental Casualty Co.*, 234 Ill. App. 3d 340, 353, 599 N.E.2d 1338, 1348 (1992). Indeed, this is the reason we uphold the trial court's dismissal of Count III of the complaint relating to the Tinley Park property. However, the deed and loan documents relating to the Bourbonais property do not undercut the plaintiff's Bourbonais-related allegations in the same way the gift letter undercuts his Tinley Park-related allegations. The deed defines the parties' shared property rights, and the mortgage and loan documents outline their shared debt obligation to their lender. None of these documents define the parties' obligations to each other. Further, none of the documents cover the same subject matter as forms the basis of the plaintiff's unjust enrichment claim. To support his claim, the plaintiff alleged that Schickel was unjustly enriched because her fraudulent conduct induced his agreement to share ownership of the Bourbonais property with her. The deed recording the conveyance of that property, and the loan documents relating to the conveyance, do not speak to the inducement on which the plaintiff bases his claim–they memorialize the effect of the alleged inducement.

¶ 30    In her brief on appeal, the defendant asserts that the plaintiff cannot obtain a quasi-contractual remedy because, under the doctrine of merger by deed, any agreements between the parties are governed by the deed to the Bourbonais property. However, as the defendant notes in her brief, the doctrine of merger by deed holds that "all prior agreements *between a buyer and a seller* are merged in the deed upon its acceptance." (Emphasis added.) *Czarobski v. Lata*, 227 Ill. 2d 364, 369, 882 N.E.2d 536, 540 (2008). Here, the dispute does not concern an arrangement between the buyer and seller of the Bourbonais property, but between the co-buyers of the Bourbonais property. Thus, the doctrine of merger by deed does not apply.

¶ 31    Accordingly, we agree with the plaintiff that the trial court erred in ruling that the deed and loan documents constitute written contracts that preempt his unjust enrichment claim. For that reason, we conclude that the trial court erred in its judgment as to count IV. That is not to say, however, that the plaintiff must succeed on his unjust enrichment claim. The trial court rejected his claim solely based on the theory that it was preempted as a matter of law by the deed and loan documents. Thus, the court did not resolve any of the other factual or legal issues relating to the claim. For that reason, we must reverse that portion of the trial court's ruling rejecting the plaintiff's unjust enrichment claim on the Bourbonais property, and remand for further proceedings consistent with this decision.

¶ 32    The plaintiff next argues that the trial court erred in rejecting his common-law fraud claim on the basis that it constituted non-actionable promissory fraud. The promissory fraud doctrine, a doctrine peculiar to Illinois law, holds that a plaintiff cannot maintain a fraud action based on a fraudulent promise to perform a future act. See Michael J. Polelle & Bruce L. Ottley, Illinois Tort Law § 9.04 (3d ed. 2001) (discussing the promissory fraud doctrine). In 1909, the supreme court articulated the rationale supporting this doctrine as follows:

> "If a promise is made to do something in the future and at the time it is not intended to perform the promise, that fact does not constitute a fraud in the law. [Citations.] If an intention not to perform constituted fraud, every transaction might be avoided where the facts justified an inference that a party did not intend to pay the consideration or keep his agreement. A mere breach of a contract does not amount to a fraud, and neither a

-9-

knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent." *Miller v. Sutliff*, 241 Ill. 521, 526-27, 89 N.E. 651, 652 (1909).

¶ 33 This promissory fraud doctrine is limited, however, by the rule that even such fraud is actionable if it was part of a scheme or artifice to defraud. See Polelle & Ottley, *supra*, § 9.04; *Doherty v. Kahn*, 289 Ill. App. 3d 544, 562, 682 N.E.2d 163, 176 (1997) (*abrogated on other grounds by Byung Moo Soh v. Target Marketing Systems, Inc.*, 353 Ill. App. 3d 126, 817 N.E.2d 1105 (2004)). This "scheme to defraud" exception has been explained as follows:

"As a general rule, promissory fraud, based on future acts, is not actionable in Illinois unless the promise is a part of a 'scheme' to defraud. [Citation.] The distinguishing features of a 'scheme,' however, are not clear in Illinois case law, and the exception, therefore, seems to engulf the general rule because, '[a]s fraud occurs when a misrepresentation is made with intent to induce a victim to rely thereon and a victim is deceived and relies thereon to his detriment, such misrepresentations are ordinarily the schemes by which the victim is defrauded regardless of whether the misrepresentation is as to the declarant's future intent or otherwise.' [Citatons.] " *General Electric Credit Auto Lease, Inc. v. Jankuski*, 177 Ill. App. 3d 380, 384, 532 N.E.2d 361, 364 (1988).

¶ 34 Based on this conception of a scheme to defraud, there can be no doubt that such a scheme existed here. The trial court found that "[i]t is clear from the evidence that [Schickel] promised to quit claim one half of the Tinley Park property to Plaintiff" but "never intended to do so." This intentional misrepresentation amounts to a scheme to defraud, so that her promissory fraud is, in fact, actionable.

¶ 35 The trial court rejected the plaintiff's fraud claim based solely on the above reasoning, without reaching any of the additional factual or legal issues raised by the claim. Thus, we reverse the trial court's judgment on this claim and remand for further findings consistent with this opinion.

¶ 36 In so doing, we observe that the defendant argues that there cannot have been any fraud based on a promise to convey the Tinley Park property, because she could not have made such a promise without violating the terms of her Tinley Park mortgage. This point, however, does not preclude a finding that the defendant committed fraud against the plaintiff; it only establishes that, if she did promise to convey ownership of the Tinley Park property to him, she promised also to breach her mortgage agreement.

¶ 37 The plaintiff's final argument on appeal is that the trial court erred in rejecting his claim for a constructive trust on the Tinley Park property. The trial court's sole reason for rejecting the plaintiff's constructive trust claim was that the claim was premised on the fraud claim the court had already rejected. Because we hold that the trial court erred in rejecting the fraud claim, we must also hold that the trial court erred in rejecting the claim for a constructive trust.

¶ 38 For the foregoing reasons, we affirm the trial court's dismissal of the first three counts of the plaintiff's complaint. On count IV, we reverse the trial court's rejection of the plaintiff's unjust enrichment claim on the Bourbonais property and remand for further proceedings consistent with this decision. Likewise, we reverse the trial court's rulings on counts IX and X. We remand the cause with directions for the trial court to make further

findings in accordance with the views expressed above, and to order damages as appropriate. In so directing, we note that the trial court has already granted the plaintiff relief–in the form of half of the purchase price of the Tinley Park residence plus half of its appreciation–on his promissory estoppel claim. Many of the plaintiff's other prayers for relief are stated (or must be considered) as alternatives to, rather than cumulative with, the relief already granted him. Thus, we also instruct that, after it has reconsidered the vacated portions of its judgment, the trial court should, to the extent necessary, reconsider the damages to be awarded the plaintiff to ensure that the total relief granted to him is equitable and consistent. That is, the plaintiff should be allowed to recover only once, whether by money damages or some other relief, for any wrongful deprivation of rights relating to the Tinley Park property. Likewise, the plaintiff's claims relating to the Bourbonnais property assume that he was wrongfully denied an interest in the Tinley Park property. If he is granted ownership of the Tinley Park property, or the monetary equivalent, an award of further damages relating to the Bourbonnais property would amount to a double recovery and would render the judgment inconsistent in its totality.

¶ 39  Affirmed in part, reversed in part, and remanded with directions.